FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 18, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY E.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.  1:26-cv-3006-EFS <br><br> **ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS** |

Plaintiff Mary E. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits, contending that physical impairments in her feet prevent her from performing her past relevant

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

work and require a finding of disability. Although the ALJ erred by not considering that Plaintiff reported partaking in her daily activities with frequent breaks, this error is harmless because the ALJ offered other clear and convincing reasons supported by substantial evidence to discount the alleged severity of Plaintiff's foot pain. The ALJ's nondisability finding is adequately explained and supported by substantial evidence. For the reasons that follow, the ALJ's decision is affirmed.

## I.    Background

Plaintiff filed her Title 2 application for benefits in September 2022, alleging disability beginning August 1, 2022, due to arthritis, bilateral feet pain, cysts on feet, degenerative disc disease, back and neck pain, migraines, issues with her left hand, insomnia, and sleep apnea.[2]

Plaintiff appeared for a hearing before ALJ David Skidmore in November 2024, at which Plaintiff and a vocational expert testified.[3]

---

[2] Administrative Record (AR) 189, 239.

[3] AR 44–67.

DISPOSITIVE ORDER - 2

Plaintiff testified that she had been working as a pharmacy technician for 30 years until she had to stop working because she could no longer grip objects with her hand or stand and walk for long periods of time due to severe pain and swelling in her ankles and feet.[4] A vocational expert testified that Plaintiff could still perform her past pharmacy technician job.[5]

The ALJ issued a decision finding Plaintiff not disabled.[6] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[7] As to the medical opinions, the ALJ found:

---

[4] AR 52.

[5] AR 61–62, 64.

[6] AR 18–29. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 24, 26. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 3

- the reviewing opinion of the state agency medical consultant at the initial level that Plaintiff was limited to light exertional work persuasive.

- the reviewing opinion of the state agency medical consultant at the reconsideration level that Plaintiff was limited to medium exertional work not persuasive.

- the examining opinions of Marquetta Washington, ARNP, and Emily Ketchel, PMHNP, persuasive, except for ARNP Washington's opinion as to balancing or environmental limitations.[8]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through June 30, 2028.

- Step one: Plaintiff had not engaged in substantial gainful activity since August 1, 2022, the alleged onset date.

---

[8] AR 27–28.

DISPOSITIVE ORDER - 4

- Step two: Plaintiff had the following medically determinable severe impairments: cervical and lumbar degenerative disc disease; obesity; and history of left thumb surgery.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. 404.1567(b) except she was limited to no more than frequent handling and fingering with the left hand.

- Step four: Plaintiff was capable of performing her past relevant work as a pharmacy technician.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[10] Plaintiff now appeals to district court.[11]

---

[9] AR 18–29.

[10] AR 1–3.

[11] ECF No. 1.

DISPOSITIVE ORDER - 5

## II. Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

---

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence

DISPOSITIVE ORDER - 6

## III.   Analysis

Plaintiff argues the ALJ erred by not finding her bilateral foot deformities and osteoarthritis severe impairments at step two, rejecting her subjective complaints of the severity of her foot issues when crafting the RFC, and inadequately conducting the step-four and step-five evaluations. The Commissioner argues the ALJ committed no error and substantial evidence supports the nondisability determination.

**A.   Step Two (Severe Impairment): Plaintiff fails to establish consequential error.**

Plaintiff argues that the ALJ erred at step two by not finding her bilateral foot deformities and osteoarthritis severe impairments. She contends that this error impacted the rest of the ALJ's decision because when her severe impairments of bilateral foot deformities and osteoarthritis are properly considered, she is unable to meet the

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

standing and walking requirements of light work, resulting in a determination of disabled pursuant to Medical-Vocational Guideline 201.06.[15] For the reasons that follow, the ALJ committed no consequential error at step two.

### 1. Standard

At step two, the ALJ determines whether the claimant suffers from a medically determinable "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[16] To be severe, the medical evidence must establish that the impairment would have more than a minimal effect on the claimant's ability to work.[17] Step two "is not meant to identify the impairments

---

[15] Claimants who are 55 years or older, not qualified for skilled work, and limited to sedentary work as a result of a severe medically determinable impairment are considered disabled. Medical-Vocational Guideline 201.06, 20 C.F.R. pt. 404, subpt. P, App. 2.

[16] 20 C.F.R. § 404.1520(c).

[17] *Id.* § 404.1520(a)(4)(ii); *see* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical Impairments That Are Not Severe).

DISPOSITIVE ORDER - 8

that should be taken into account when determining the RFC" as step two is meant *only* to screen out weak claims, whereas the crafted RFC must take into account all impairments, both severe and non-severe.[18] When an ALJ resolves step two in a claimant's favor by finding a medically determinable severe impairment, any error in failing to find other severe impairments is harmless at step two; however, step-two error can be prejudicial at a later step in the sequential disability analysis.[19]

### 2.    ALJ's Findings and Analysis

The ALJ found that Plaintiff had severe impairments of degenerative disc disease, obesity, and history of left thumb surgery, so

---

[18] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[19] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

any error in failing to find severe bilateral foot deformities and osteoarthritis was harmless at step two.[20]

Any step-two error also did not prejudice Plaintiff at a later step. First, the ALJ did not summarily discount Plaintiff's foot issues in her step-two analysis, which would have indicated a likely failure to consider whether her foot issues impacted her ability to work elsewhere in the ALJ's decision. Instead, the ALJ meaningfully considered the effect of Plaintiff's foot issues:

> The claimant's bilateral foot arthritis is similarly nonsevere as indicated by the essentially normal findings at the February 2023 internal medicine consultative exam. . . . The claimant also had essentially negative bilateral feet x-rays in February 2023. . . . The claimant was seen by Joshua B. Grimm, DPM in June 2024 for complaints of bilateral foot pain. . . . The claimant was found to have painful bilateral Lisfranc's joint pain and rearfoot pain with lowering of arch, equinus at the level of the ankle on the left; and equinus at the level of the ankle, tenderness to sinus tarsi on the right. . . . However, the claimant had 5/5 bilateral strength, normal muscle tone, and normal gait. . . . X-rays taken at that time were also normal and her joints were well aligned. . . . Shoe gear modification and surgery was discussed although the claimant did not wish for surgery, and the claimant was prescribed Celebrex which she had to later stop taking due to an allergic reaction. . . . These findings on exam, along with the noted x-rays, are consistent with the

---

[20] AR 21.

DISPOSITIVE ORDER - 10

> claimant's bilateral foot arthritis being nonsevere, as there is no indication the claimant is significantly limited in her ability to perform basic work-related activities related to this for 12 consecutive months. . . .[21]

Next, as required, the ALJ considered Plaintiff's non-severe bilateral foot impairments when crafting the RFC.[22] The ALJ specifically considered that Plaintiff (1) alleged arthritis, bilateral foot pain, and cysts on her feet; (2) reported to her primary care provider in June 2022 that her foot pain had grown worse over the past year and limited her ability to stand for extended periods; (3) testified she was no longer capable of extended walking through the hospital; (4) did not have ankle swelling on repeated exams; (5) reported to her primary care provider in December 2022 that she had 5/10 aching bilateral foot pain aggravated by ambulation and relieved by rest; (6) had bilateral foot pronation on exam; (7) had "essentially normal" bilateral feet X-rays in February 2023 except for small to moderate plantar calcaneal enthesophytes; (8) performed well on the musculoskeletal and

---

[21] AR 21 (citations omitted).

[22] AR 24–28.

DISPOSITIVE ORDER - 11

walking/standing test conducted by the consultative examiner; and (9) had "decreased sensation to sharp end right medial foot."[23] Based in part on this evidence, the ALJ opined that Plaintiff was limited to performing light exertional work involving no more than frequent handling and fingering with the left hand. Whether substantial evidence supports the RFC is a different issue and is incorporated in the next analysis, but Plaintiff's standalone argument that a step-two error was harmful is meritless.

**B.     Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues substantial evidence does not support the RFC because the ALJ failed to provide valid reasons for discounting the severity of her feet-related symptoms. She argues the ALJ unduly relied on unremarkable physical-exam findings, conservative treatment, and Plaintiff's daily activities. As is discussed below, although the ALJ failed to consider that Plaintiff takes breaks during her daily activities, the ALJ's reasons for discounting Plaintiff's

---

[23] AR 24–26.

DISPOSITIVE ORDER - 12

symptoms are clear and convincing reasons supported by substantial evidence.

### 1.    Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[24] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence; 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

---

[24] 20 C.F.R. § 404.1529(c).

DISPOSITIVE ORDER - 13

and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[25]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[26] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[27]

### 2. Plaintiff's Symptom Reports

Plaintiff alleged the severity of her symptoms in a function report, to medical professionals, and in oral testimony. In her

---

[25] *Id.* § 404.1529(c). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2025).

[26] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. § 404.1529(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[27] *Smartt*, 53 F.4th at 499 (alteration added).

DISPOSITIVE ORDER - 14

November 2022 function report, Plaintiff alleged that she had to stop working because she could no longer tolerate long periods of standing and walking on concrete floors due to arthritis, pain, and cysts in her feet.[28] She alleged that sitting for even minimal time caused her legs and feet to go numb.[29] She performed household chores in 20-minute increments.[30] Sharp pains in the tops of her feet occasionally interrupted her sleep.[31] She could walk up to a mile or for 20 minutes before needing to stop due to pain.[32]

At the November 2024 hearing, Plaintiff testified to the following. She stopped working in August 2022 because her feet would continually cramp and she could not stand and walk for one to two hours a day.[33] At the end of a four-hour workday, she had to take a

---

[28] AR 249, 254.

[29] AR 249, 254.

[30] AR 250–51, 253.

[31] AR 250.

[32] AR 254.

[33] AR 51–52.

DISPOSITIVE ORDER - 15

muscle relaxant and elevate her feet at home to deal with swelling.[34] Because of cramping and throbbing pain in her feet, she had to do things in increments of 20 to 30 minutes followed by 30 to 60 minutes of rest with her legs elevated.[35] Her feet conditions affected her balance and gait and she had to hold on to walls while walking.[36] When standing, she had sharp and throbbing pain in her feet.[37] She could not take narcotic pain medication because of side effects and impacts to her job performance.[38] The muscle relaxers she had to take gave her brain fog and caused her to make mistakes at work.[39] She could make one or two trips from the car to the house carrying up to ten pounds.[40]

---

[34] AR 52.

[35] AR 53.

[36] AR 53.

[37] AR 54.

[38] AR 54.

[39] AR 55.

[40] AR 57.

DISPOSITIVE ORDER - 16

As to complaints to medical providers, in June 2022, Plaintiff reported having joint pains and difficulty walking to a primary care provider, who assessed Plaintiff with chronic pain of the bilateral feet and soft tissue swelling over her right malleolus.[41] In December 2022, she complained of having 5/10 bilateral foot pain aggravated by ambulating, to her primary care provider, who assessed her with decreased arch height bilaterally and bilateral foot pronation, and prescribed orthotics.[42]

In February 2023, Plaintiff complained to ARNP Washington on examination of arthritis, bilateral foot pain, and cysts on feet, which she reported were not improved by steroid injections and caused 6–7/10 pain in her joints going across the top of her feet, sore ankles, and intermittent sharp pain in her heel.[43] She said standing increased her pain to 4/10 and her pain was 7/10 by the end of a 4-hour pharmacy

---

[41] AR 610.

[42] AR 484–85.

[43] AR 444.

DISPOSITIVE ORDER - 17

technician shift.[44] She said she could stand for 20 to 30 minutes before starting to have pain.[45] She said she did not have any strength in her ankles so she was not able to hop.[46] She could tandem walk with difficulty, could walk on her toes with difficulty, and had decreased sensation to sharp stimuli in her right medial foot.[47]

In March 2023, she again reported significant foot pain, joint pain, and neck pain.[48] In June 2024, she complained to a foot and ankle specialist that she had worsening pain to the tops of her bilateral feet, described as dull, throbbing, and sharp.[49] She said she had nerve pain to the bottom of her right second toe and received a steroid injection in her right foot that gave no relief.[50] X-ray imaging showed soft tissue

---

[44] AR 444.

[45] AR 444.

[46] AR 448.

[47] AR 448–49.

[48] AR 477.

[49] AR 532.

[50] AR 532.

DISPOSITIVE ORDER - 18

swelling, degenerative changes, and spurring midfoot.[51] The provider assessed her on examination with bilateral foot joint pain, arch lowering and equinus of the left foot, and equinus and tenderness of the right foot.[52] The provider also assessed her with arthritis in both feet and right sinus tarsi syndrome.[53] Plaintiff made the same complaints in July 2024 and the provider made the same assessments.[54]

Lastly, in October 2024, Plaintiff reported to her primary care provider that she had numbness in her feet and was unable to stand for long hours.[55]

### 3. ALJ's Reasons and Analysis

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her "medically determinable

---

[51] AR 533.

[52] AR 533.

[53] AR 533.

[54] AR 530.

[55] AR 538.

DISPOSITIVE ORDER - 19

impairments" inconsistent with findings from her medical providers, negative X-rays, her "relatively modest treatment history," findings from the consultative examination, the general lack of musculoskeletal complaints at recent doctor appointments, and Plaintiff's reported daily activities.[56] In doing so, the ALJ provided clear and convincing reasons supported by substantial evidence.

First, substantial evidence supports the ALJ's reasoning based on the overall medical record. Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[57] An ALJ may consider discrepancies between a claimant's reported symptoms and the observations of treatment providers.[58] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the

---

[56] AR 24–28.

[57] 20 C.F.R. § 404.1502(f), (g); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[58] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

DISPOSITIVE ORDER - 20

ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[59]

Here, the ALJ correctly noted that in June 2022, Plaintiff's primary care provider reported that she had right soft tissue swelling over her right malleolus in her ankle, but this was before the alleged onset date and later exams during the relevant period did not show ankle swelling.[60] The ALJ also acknowledged that in December 2022, Plaintiff complained to her primary care provider of 5/10 aching pain in both feet that was aggravated by ambulating and relieved by rest, but the ALJ also appropriately considered that upon examination for these

---

[59] *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3d at 680 (emphasis added in *Smartt*)).

[60] AR 25 (citing AR 420 (June 2022 primary-care examination), 448 (February 2023 consultative examination report negative for swelling), 471 (September 2023 primary-care note stating Plaintiff reported no ankle swelling)).

DISPOSITIVE ORDER - 21

complaints, Plaintiff had no tenderness to palpation, no pain on range of motion, full strength in all lower extremities, and a normal gait.[61] This exam also revealed six degrees of right pronation and eight degrees of left pronation, which the ALJ rationally considered as not indicative of Plaintiff's reported pain by itself because of the otherwise normal physical exam findings on this exam and others throughout the relevant period.[62]

Additionally, the ALJ considered that February 2023 X-rays of Plaintiff's feet were normal except for small to moderate plantar calcaneal enthesophytes, which the ALJ rationally considered were not supportive of severe foot pain.[63] Those X-rays revealed no fracture or dislocation, joint spaces maintained, and no osseous erosive changes, with the overall impression of "[n]o acute osseous abnormality of the bilateral feet."[64] As the ALJ noted, later X-rays in June 2024 were also

---

[61] AR 25 (citing AR 485).

[62] AR 25–27 (citing AR 447–48, 471, 477, 485, 545, 588, 809).

[63] AR 25 (citing AR 439).

[64] AR 439.

largely normal, revealing "[n]ormal findings for age," "adequate bone density," and "bones and joints well aligned," except with "soft tissue swelling, degenerative changes and spurring midfoot."[65] The provider assessed Plaintiff with bilateral osteoarthritis and ankle joint swelling based in part on the abnormal X-ray findings, but treated Plaintiff only with a prescription NSAID, and the provider's musculoskeletal exam was normal except for noting the reported bilateral foot pain.[66] Plaintiff followed up a month later having discontinued the NSAID because she was allergic, but the provider prescribed no further treatment, noting the same physical-exam results.[67] These records, in addition to the ALJ's consideration that Plaintiff was prescribed orthotics that she

---

[65] AR 533.

[66] AR 533.

[67] AR 530.

DISPOSITIVE ORDER - 23

seemingly never used, support finding Plaintiff's conservative treatment history did not corroborate the alleged severity of her pain.[68]

Next, the ALJ appropriately relied on the February 2023 consultative examination in discounting Plaintiff's subjective symptoms by specifically explaining which of ARNP Washington's findings discounted severe foot pain:

> Significantly, the claimant's musculoskeletal exam was within normal limits. . . . The claimant could tandem walk and walk on toes with difficulty and said she was unable to hop because she had no strength in her ankles. . . . However, the claimant had a normal gait, stable station, could walk on heels, stand on either foot and bend, and could squat. . . . The claimant also had negative straight leg raising in the seated and supine positions and negative Waddell. . . . The claimant had decreased sensation to sharp end right medial foot but her sensation was grossly intact to light touch and pinprick throughout the bilateral upper and lower extremities. . . . The claimant also had no muscle tenderness and no trigger points among other generally normal findings on exam. . . . These findings on exam are supportive of the above residual functional capacity.[69]

---

[68] AR 25, 485. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

[69] AR 25–26 (citations omitted).

DISPOSITIVE ORDER - 24

These reasons are supported by substantial evidence because the ALJ's discussion correctly reflects ARNP Washington's report.[70] The ALJ's analysis is specific to observations and findings related to how Plaintiff might be limited by her foot conditions. The ALJ appropriately considered both normal and abnormal findings in ARNP Washington's report. And the ALJ appropriately discounted Plaintiff's reports based on ARNP Washington's opinion that Plaintiff could perform light work, as the ALJ explained that the opinion was supported by examination and consistent with the overall record.[71]

Finally, any error in the ALJ's discounting of Plaintiff's subjective symptoms based on her activities of daily living is harmless. The ALJ may discount a claimant's reported disabling symptoms if she can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms or involving the performing of

---

[70] AR 444–51.

[71] AR 27. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding that a doctor's opinion was a specific and legitimate reason for discounting a claimant's pain symptoms).

DISPOSITIVE ORDER - 25

work-related functions.[72] In doing so, the ALJ must consider whether the nature of the activities allows for frequent breaks that would be inconsistent with maintaining a daily work schedule and also should not penalize the claimant for attempting to engage in normal life activities.[73] Here, the ALJ considered that Plaintiff consistently reported participating in activities that rationally did not support standing or walking limitations beyond the RFC, such as gardening, household chores, going out shopping, and fishing.[74] The ALJ did not, however, consider that Plaintiff reported doing mostly all activities in 20- to 30-minute increments with breaks in between.[75] Nonetheless, this error is harmless to the ALJ's discounting of Plaintiff's symptoms because, as discussed above, the ALJ offered other clear and convincing

---

[72] *Molina*, 674 F.3d at 1113.

[73] *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

[74] AR 25–26, 28, 251–54, 446, 455.

[75] *See* AR 53, 250–54, 455.

DISPOSITIVE ORDER - 26

reasons supported by substantial evidence for discounting Plaintiff's symptoms.[76]

## C.      Steps Four and Five: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ's failure to credit the substantial evidence supporting her allegations of more disabling limitations resulted in incomplete questioning to the vocational expert. This argument depends on her contentions that the ALJ erred in evaluating

---

[76] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

DISPOSITIVE ORDER - 27

her symptom reports, and because there was no error, this final argument necessarily fails.[77]

### IV.    Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 11**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 18th day of June 2026.

EDWARD F. SHEA
Senior United States District Judge

---

[77] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989).

DISPOSITIVE ORDER - 28